Argued January 15, decided January 28, 1913.

## LOVE v. CHAMBERS LUMBER CO.*

(129 Pac. 492.)

**Appeal and Error—Verdict—Conclusiveness.**

1. Under Article VII, Section 3, of the constitution, as amended November 8, 1910 (see Laws 1911, p. 7), providing that no fact tried to a jury shall be otherwise re-examined in any court unless it can affirmatively say that there is no evidence to support the verdict, the Supreme Court cannot disturb a verdict reached under proper instructions, if there is evidence to support it.

**Master and Servant—Master's Duties—Guarding Place of Work.**

2. Where the crossing of a shafting was incident to the work in which an employe was engaged, it was the employer's duty to guard the shaft so as to protect the employe so far as practicable.

**Master and Servant—Assumed Risk—Factory Act.**

3. Assumed risk is not a defense in an action under the factory act for failure to guard machinery.

---

*The authorities on a servant's assumption of risk of master's breach of statutory duty are discussed in notes in 6 L. R. A. [N. S.] 981; 19 L. R. A. [N. S.] 646; 22 L. R. A. [N. S.] 634; 33 L. R. A. [N. S.] 646; and 42 L. R. A. [N. S.] 1229.                    REPORTER.

Sig. 5

**Master and Servant—Injuries—Evidence—Repairing Defects.**

4. Evidence of the placing of guards on machinery after an employe was injured is not admissible to show negligence.

**Master and Servant—Evidence—Admission—Guarding Machinery.**

5. In a factory employe's action for injuries from an alleged unguarded machine, in which it was an issue whether it was practicable to have guarded it, evidence that, after the accident, it was guarded, was admissible to show the practicability of guarding the machinery.

**Trial—Instructions—Covered by Instructions Given.**

6. In a factory employe's action for injuries from unguarded machinery which plaintiff was passing when injured, defendant requested a charge that if plaintiff was injured by performing his duties in a dangerous manner, and might have performed them safely in a manner provided by defendant, he would be guilty of negligence barring recovery, notwithstanding that defendant was also negligent. The court instructed that if there was another safe way of doing his work which plaintiff knew, and notwithstanding he went the way he did, and if such way was dangerous to plaintiff's knowledge, and by going such dangerous way he was injured, defendant would not be liable, that in the absence of instruction by defendant as to what way to take the question was whether the way plaintiff took was one an ordinarily prudent person would have taken, and if defendant provided a safe passageway leading to and from the saw plaintiff was operating to a point where it was necessary for him to go, and plaintiff was instructed to follow such route, but took a more dangerous route and sustained injury as a result thereof, he would be guilty of contributory negligence. Held, that the requested instruction was sufficiently covered by the instruction given.

**Master and Servant—Instructions—Contributory Negligence.**

7. A requested instruction that, if the shafting with which an employe came in contact was so located as to preclude anticipation of danger therefrom by the employer, its failure to guard the shafting was not negligence, was properly refused as making the employer's anticipation of danger the measure of its liability, irrespective of its due care.

**Appeal and Error—Harmless Error—Additional Instructions.**

8. After the jury had retired, the court recalled it, and gave a further instruction, which was strongly favorable to defendant,

when a juror stated that they had already come to a verdict. They were, however, directed by the court to consider the additional instruction, and the jury again retired and returned a verdict, with which they handed in a paper containing another verdict for the same amount with the foreman's name erased. Held, that any impropriety in giving the additional instruction after the verdict had been made was harmless to defendant; it being evident that the two verdicts were the same.

From Lane:   LAWRENCE T. HARRIS, Judge.

Statement by MR. CHIEF JUSTICE MCBRIDE.

This is a statutory action brought by Ralph E. Love against the Chambers Lumber Company, under Section 5040, L. O. L., being part of the factory act, which section is as follows:

"Any person, firm, corporation, or association operating a factory, mill or workshop where machinery is used, shall provide and maintain in use belt-shifters or other mechanical contrivances for the purpose of throwing on or off belts or pulleys while running, where the same are practicable with due regard to the nature and purpose of said belts and the dangers to employes therefrom; also reasonable safeguards for all vats, pans, trimmers, cut-off, gang edger, and other saws, planers, cogs, gearings, belting, shafting, coupling, set screw, live rollers, conveyors, mangles in laundries, and machinery of other or similar descriptions, which it is practicable to guard, and which can be effectively guarded with due regard to the ordinary use of such machinery and appliances, and the dangers to employes therefrom, and with which the employes of any such factory, mill or workshop are liable to come in contact while in the performance of their duties; and if any machine, or any part thereof, is in a defective condition and its operation would be extra hazardous because of such defect, or if any machine is not safeguarded as provided in this act, the use thereof is prohibited, and a notice to that effect shall be attached thereto by the employer immediately on receiving notice of such defect or lack of safeguard, and such notice shall not be removed until said defect has been remedied or the machine safeguarded as herein provided."

Plaintiff introduced evidence tending to show that for several weeks prior to the accident he had been employed to operate a ripsaw on the main floor of defendant's sawmill. The power operating this saw was furnished by a belt from a supplementary shafting on the ground floor of the mill, and this shafting was, in turn, operated by a belt connected with the main shafting, which was also located on the ground floor, and ran east and west at a height of about 20 inches from the floor for a distance of from 30 to 40 feet. It was a part of plaintiff's duty to remove and replace this belt when it became necessary to stop the saw at which he had been working or to start the same. He was often required thereby to go down to the ground floor—sometimes four or five times a day— to the place in the basement where the belt attached to the supplementary shafting was operated, to throw off or put on the belt, as occasion might require. Immediately preceding the accident, it being necessary to stop his saw to make some repairs or changes, plaintiff left the place where he was working, and went due east about 30 or 40 feet on the main floor of the mill to the top of a stairway leading down to the main floor of the engine room. After descending into the engine room, and requesting the engineer to slow down, he turned to the right in front of the engine, passing through the belt which ran from the driving wheel to the main shaft, and walked along westerly, parallel with the main shaft, until he came to a place between the supports of the main shaft where there were no pulleys, and there crossed the shaft. The space between the supports where plaintiff crossed was about six feet in width, and was clear except at the extreme end next to the westerly support, where there was a coupling or union in the shaft, which coupling was used as a pulley to operate a grindstone situated about six feet south of the coupling. The belt which operated the grindstone hung loose at the time plaintiff was

injured.   One end was attached to the stone; the other being looped loosely around the shaft as it had been thrown off the pulley.   There was evidence tending to show that there were two other ways by which the belt which plaintiff wished to throw off could have been reached without crossing the main shaft, but both these were obstructed and not practicable on the day of the accident, and that the way he pursued was the only practical way known to him.   In passing over the shaft the plaintiff's clothing became entangled, and he received the injuries complained of.   None of the shafting or belting where plaintiff received the injury was guarded in any way, and there was testimony tending to show that it could have been so guarded without in any manner interfering with its practical efficiency.   Plaintiff had a verdict and judgment, and defendant appeals.

                                        AFFIRMED.

For appellant there was a brief over the names of *Mr. J. S. Medley* and *Messrs. Woodcock & Smith,* with an oral argument by *Mr. Medley.*

For respondent there was a brief over the names of *Messrs. Seitz & Seitz* and *Mr. S. D. Allen,* with an oral argument by *Mr. Allen.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

Many of the facts above stated are strongly contradicted by testimony introduced by defendant, but we are not the judges of the weight of testimony.

1. Where there is evidence to support a verdict, and the facts have been submitted to a jury under proper instructions, we are precluded from disturbing such verdict.   Article VII, Section 3, of the constitution as amended November 8, 1910 (Laws 1911, p. 7) ; *Wills* v. *Palmer Lumber Co.,* 58 Or. 536 (115 Pac. 417) ; *Purdy* v. *Van Keuren,* 60 Or. 263 (119 Pac. 149).

2. The testimony of plaintiff's witnesses indicates that the plaintiff's duties in the course of his employment required him to cross the shaft, and that this was his usual and the most practical route to the place where he was compelled to go to throw off the belt. Crossing the shaft was, therefore, an act incidental to the work in which he was engaged, and it was the duty of defendant to have so guarded it as to have so far as practicable protected him from danger.

3. The contention that plaintiff assumed the risk incident to the unguarded condition of the machinery cannot be sustained. This court has already held that in actions under the factory act assumption of risk is not a defense. *Hill* v. *Saugested,* 53 Or. 178 (98 Pac. 524: 22 L. R. A. [N. S.] 634) ; *Erickson* v. *McNeeley & Co.,* 41 Wash. 509 (84 Pac. 4). It was therefore not error for the court to refuse to instruct the jury that the employe assumes the open and visible risks of his employment. While it may be true, as stated in *Byrne* v. *Nye & Wait Carpet Company,* 46 App. Div. 479 (61 N. Y. Supp. 741), that the employer is not required to guard machinery situated remotely from the place where the employe is at work, and where the employer would not reasonably anticipate that he would go, no such conditions appear in this case. The evidence rather tends to indicate that defendant's manager ought reasonably to have anticipated that plaintiff would go where he actually went, and would probably take the route that he did take.

4. An exception was taken to the admission of evidence showing that a guard or boxing had been placed over the machinery subsequent to the injury to plaintiff. Where such testimony is offered for the purpose of showing negligence at the time of the accident, it is clearly inadmissible. *Columbia & Puget Sound R. Co.* v. *Hawthorne,* 144 U. S. 202 (12 Sup. Ct. 591: 36 L. Ed. 405).

5. However, the testimony was not offered nor admitted for such purpose, but for the purpose of showing the practicability of operating the machinery when so guarded. The complaint alleged that it was practicable for defendant to have so guarded the machinery as to have prevented the accident without interfering with its ordinary, use. This was denied in the answer, so it became necessary for plaintiff to establish the proposition that it could be so guarded. No better evidence could have been introduced for this purpose than to show that after the accident the machinery had been so guarded, and that such safeguards had not in any way impeded or interfered with its operation. *Erickson* v. *McNeeley Co.,* 41 Wash. 509 (84 Pac. 4).

6. Defendant requested the following instruction, which was refused:

"If you find from the evidence in this case that the plaintiff was injured by performing his duties in a dangerous manner, and that he might have performed them safely in a manner provided by the defendant, the plaintiff would be guilty of contributory negligence and could not recover, notwithstanding the defendant has been remiss in its duty of safeguarding the machinery that caused the injury."

We think this instruction is sufficiently covered by the general instruction on this point, which was as follows:

"Should you find from the evidence that the way taken by the plaintiff in going to the point in the basement, where the belt was to be adjusted, was the usual ordinary way pursued by plaintiff and other employes, whose duties called upon them to go into the basement and to the place where plaintiff was going, and that said way was not in itself so dangerous that an ordinarily prudent man under the same circumstances and conditions would not have gone the same way, then you are instructed that the plaintiff in adopting such course in going to and from said basement at the time he was injured was not guilty of contributory negligence. However, in this connection as the court has already instructed you, if the

plaintiff was instructed by the defendant to take a way. different than the one taken by the plaintiff, then, if, notwithstanding such instruction, and notwithstanding another way, safe and open, existed, the plaintiff took the way that he did, then, in that event, the rule would be that the plaintiff would be guilty of contributory negligence, for, by reason of taking the way he did, he sustained the injury. But, in determining whether or not an ordinarily prudent man would have taken the way that plaintiff took, you have a right to take into consideration whether or not such a way was usually and customarily used by employes, if it was so used in going to the place where plaintiff was going to adjust the belt. If there was another safe way, and plaintiff knew it, and notwithstanding such knowledge plaintiff went the way he did, and if the way pursued by plaintiff was dangerous, and plaintiff knew it, and by reason of going said dangerous way plaintiff was injured, then, in that event, defendant would not be liable. In the absence of any instruction upon the part of the defendant, concerning what way to take, the question is, Was the way taken by plaintiff one which an ordinarily prudent person would have taken under the same circumstances? If you find from the evidence in this case that the defendant provided the plaintiff with a safe passageway leading to and from the saw, which it is alleged he was operating, to a point where it was necessary for the plaintiff to go to adjust the belt mentioned in plaintiff's complaint, and the plaintiff had been instructed to follow said route, and in violation of such instructions chose a different and more dangerous route in going to or coming from said point, and in consequence thereof sustained the injury complained of, he would, in that case, be guilty of such contributory negligence as would preclude a recovery in this case, and it would be your duty to find for the defendant."

This instruction, however, is predicated upon the assumption that such way, if there was such a way, must have been open. In other words, to be available as a way, it must have been a way that could have been pursued by the plaintiff.

7. The defendant requested the following instruction, which was refused:

"If you find from the evidence that the shafting with which the plaintiff came in contact and which caused the injury was so located as to preclude the anticipation of danger therefrom upon the part of the defendant, the failure of the defendant to safeguard the same cannot be regarded as negligence upon the part of the defendant."

This instruction makes defendant's anticipation of danger the measure of its liability, and was properly refused. The question is not what the defendant, or its servants or agents, careless or otherwise, might have anticipated, but what an ordinarily prudent man would reasonably have anticipated.

8. After the jury had retired, the court recalled them, and gave them further instructions as follows:

"The court has asked you to come down for an additional instruction which should have been given you in the first instance, and the court will now give it to you so that you may take it into consideration in connection with the other instructions that have already been given. It is alleged by the defendant that the plaintiff failed to exercise such care as he was required to use in attempting to get over the main shaft. It is denied by the plaintiff that he failed to exercise the care that was required of him. The defendant alleges that the plaintiff was guilty of contributory negligence in attempting to go over the main shaft. That is to say, the defendant says that the plaintiff was guilty of contributory negligence in the act of attempting to get over the main shaft. The plaintiff denies it. So, therefore, one of the questions for you to decide is whether or not the act of the plaintiff in attempting to get over the main shaft was done with a degree of care which the plaintiff would be required to exercise. The court instructs you that if the plaintiff failed to exercise ordinary care, such care as an ordinarily prudent person would have exercised under all the circumstances of the case, and by reason of his failure to exercise such care the accident occurred, then, in that

event, the defendant would not be liable, even though you should find that it was the duty of the defendant to provide safeguards for the belting, the shafting, and the coupling. Now the plaintiff, in getting over, or attempting to get over, the main shaft, was required to exercise such care as an ordinarily prudent person would have exercised under the circumstances. And if he failed to do that, and by reason of such failure the injury was sustained, the defendant would not be liable, even though the defendant should have procured safeguards for the belting, the main shaft, or the coupling. Although the master must provide a guard or other protection to prevent injury to employes for shafting and other machinery, still he will not be responsible for damages occasioned by injury, where the danger is well known to the servant, and could have been avoided by the exercise of due care upon his part. Now this is one of the elements of contributory negligence alleged by the defendant, and the burden of proof rests upon the defendant with respect to this, the same as the other elements of contributory negligence, which have been called to your attention."

A juror then said:

"We have already come to a verdict and signed it, before we got this information," to which the court rejoined:

"It is the duty of the jury to take into consideration this instruction along with the other instructions that the court has given."

A Juror: "Do we need a new verdict?"

The Court: "Gentlemen of the jury, proceed with your deliberations and take into consideration all the instructions thus far given you."

Counsel for Plaintiff: "It appearing after the instruction last given that the jury had already reached a verdict, the plaintiff excepts to the instruction of the court that they should return to the jury room and consider the matter further."

The jury retired, and thereafter returned with a verdict against defendant for $5,215. With the verdict they

handed in a paper, being a verdict for the same amount with the name of the foreman crossed out. The verdict was received and the jury discharged. It is impossible to see how this additional instruction, or the sending out of the jury, could have injured defendant. The additional charge was strongly favorable to defendant, and was not excepted to, the exception being merely to the action of the court in directing the jury to retire a second time. It is evident that the form of verdict which contained the name of the foreman crossed with a pen mark was the verdict first agreed upon, and that, after deliberation, the jury did not wish to change it, and therefore found another verdict identical with the first. The defendant was not injured by the action of the court in requiring the jury to deliberate further.

The judgment of the circuit court is affirmed.

AFIRMED.