Argued December 1, decided December 9, 1913.

## DUNN *v.* ORCHARD LAND CO.*

(136 Pac. 872.)

**Master and Servant—Injuries to Servant—Employers' Liability Act—Scope.**

1. In Employers' liability law (Laws 1911, p. 16; L. O. L., p. xxxvi) Section 1, imposing certain duties on all owners or persons engaged in the erection or operation of any machinery, the provision of the latter part of the section requiring generally all owners, contractors, subcontractors, and other persons having charge of or responsible for any work involving risk or danger to the employees or to the public to use every precaution practicable, does not restrict the requirements of the law to the particular persons mentioned in the first part of the section, but rather extends its scope.

**Master and Servant—Injuries to Servant—"Machinery."**

2. A slab haul, consisting of a staging, incorporated with which was a system of dead rolls for conveying slabs from a sawmill to be burned at the end of the structure, is "machinery" within employers' liability law (Laws 1911, p. 16; L. O. L., p. xxxvi), Section 1, imposing certain duties on all owners or persons engaged in the erection or operation of any machinery.

**Master and Servant—Injuries to Servant—Employers' Liability Law —"Involving Risk or Danger."**

3. Hauling slabs along a slab haul 50 feet high on dead rolls from a sawmill to the outer end of the structure to be burned is work "involving risk or danger" to the employee within employers' liability law (Laws 1911, p. 16; L. O. L., p. xxxvi), Section 1, imposing certain duties on persons having charge of or responsible for work involving risk or danger to the employees or to the public.

**Trial—Instructions—Applicability to Evidence.**

4. Refusal of an instruction that, if the injury was caused by an inevitable accident, plaintiff cannot recover is not error where no situation of that kind is disclosed by the evidence.

From Lane: LAWRENCE T. HARRIS, Judge.

Department 1.  Statement by MR. JUSTICE BURNETT.

This is an action by O. W. Dunn against the Orchard Land & Timber Company, a corporation, to recover

---

*As to what instrumentalities are covered by the term "machinery," see note in 57 L. R. A. 821. And on the question what is comprehended in expression "machinery of every description," in statutes imposing duty on master as to placing guards, see note in 30 L. R. A. (N. S.) 36.          REPORTER.

68 Or.—7

damages for a personal injury. The complaint alleges in substance that, in connection with its sawmill in Lane County, among other machinery thereof, the defendant controlled and operated a structure, scaffolding and staging known as a slab haul, extending out from the mill for a distance of about 50 feet, incorporated with which was a system of dead rolls used for conveying from the mill the slabs resulting from the manufacture of lumber, to be burned at the end of the structure. It was the duty of the plaintiff, as the employee of the defendant, to pass along a board walk adjacent to the line of rolls, and, with a tool called a pickaroon, to drag the slabs along the rolls, and thus conduct them into the fire. The staging supporting the slab haul was upward of 27 feet above the ground where the accident complained of occurred. There was a guard-rail most of the way along this walk; but there was none for quite a distance at the end of the haul next to the fire. The plaintiff states in substance that while in the discharge of his duties mentioned he fell from the staging at the point where there was no guard-rail, and suffered the injuries of which he complains.

The language of the answer "admits that the defendant is a corporation duly organized and existing under and by virtue of the laws of the State of Oregon, and is the owner of and had control of a sawmill in Lane County, Oregon, and, among other machinery in said sawmill, owned, controlled and operated, from said sawmill, structure or scaffolding extending out from said mill a distance of about 50 feet and about 5 feet wide, on which were dead rolls, and which structure, scaffolding and dead rolls were operated as a slab haul, and were used and operated for conveying from said mill slabs and other refuse, so that the said slabs and refuse would fall from the end of said dead rolls to the ground and enter a fire at the end of said

rolls, and the end of said slab roll was about 24 feet from the ground, and that on the day of the accident mentioned in the said complaint, to wit, the 8th day of June, 1912, the said plaintiff fell from the end of said scaffolding to the ground, and was jarred and bruised.'' As an affirmative defense the defendant alleges contributory negligence of the plaintiff and assumption of risk.

The affirmative matter of the answer is denied by the reply. From a verdict and judgment in favor of the plaintiff, the defendant appeals.          AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur & Spencer* and *Mr. Howard Bennett,* with an oral argument by *Mr. Bennett.*

For respondent there was a brief over the names of *Messrs. Thompson & Hardy,* with an oral argument by *Mr. Charles A. Hardy.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The vital question urged by the defendant is whether or not the action is governed by what is known as the ''employers' liability law,'' a measure adopted by the initiative process at the general election held in November, 1910: Laws 1911, Ch. 3. It is provided by Section 1 of that act that ''all owners, contractors, subcontractors, corporations or persons whatsoever, engaged in the construction, repairing, alteration, removal, or painting of any building, bridge, viaduct, or other structure, or in the erection or operation of any machinery,'' are required to thoroughly inspect all materials used, and to construct all scaffolding, staging, false work, or other temporary structure with a safety factor of four times the maximum weight to be sustained by the structure. The act prescribes that all

scaffolding, staging or other structure more than 20 feet from the ground or floor shall, among other things, be provided with a strong safety rail or other contrivance to prevent anyone from falling therefrom. The section under consideration, after providing various duties incumbent upon persons in charge of electrical transmission, closes with this language: "And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices": Laws 1911, Ch. 3; L. O. L., p. xxxvi. The act provides a criminal penalty for anyone responsible for its observance who shall violate its terms. By Section 6 it is provided that "the contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damages." The question of the applicability of this act was presented to the trial court by various requests to instruct on the subject of contributory negligence and assumed risk and exceptions to the charge of the court, indicating to the jury that those questions were not properly involved in the action.

In considering what is known as the "factory act" (Section 5040, L. O. L. et seq.), this court, speaking by Mr. Chief Justice BEAN, in *Hill* v. *Saugested,* 53 Or. 178 (98 Pac. 524, 22 L. R. A. (N. S.) 634), held that the defense of assumption of risk was not admissible under that statute, on the ground that, inasmuch as a criminal penalty was provided for an employer who disobeyed the act, the employee could not be consid-

ered as having entered into a contract which involved
a violation of the law on that point by the other con-
tracting parties.  In other words, the statute, having
made it a criminal offense on the part of the employer
to create or maintain an avoidable risk, the contract of
the workman for employment will not be construed to
include such a hazard, because that would be to con-
tract for a violation of law by at least one of the par-
ties, and hence void as against public policy.  This
ruling was followed by Mr. Chief Justice McBRIDE
in construing the same statute in *Love* v. *Chambers
Lumber Co.,* 64 Or. 129 (129 Pac. 492).  In the later
case of *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or.
516 (133 Pac. 351), the same principle was applied to
the act now under consideration.

1. Having in mind these precedents, excluding the
defense of assumed risk, and remembering that the
statute itself expressly eliminates contributory negli-
gence except in mitigation of damages, it remains to
determine whether the complaint states a case within
the purview of the "employers' liability law," so
called.  The statute exerts its authority against "all
owners * * or persons whatsoever engaged * * in
the erection or operation of any machinery."  It thus
takes cognizance not only of those who engage in
building but also those who operate machinery, and,
where it declares that "generally all owners, con-
tractors, or subcontractors, and other persons having
charge of, or responsible for, any work involving a
risk or danger to the employees or the public," it does
not in good reason restrict the benefits and require-
ments of the law to particular persons mentioned in
the beginning of the section, but, rather, enlarges and
expands the scope of the act.  The statute lays its com-
mands not only upon those engaged in building or in
the transmission and use of electricity, but also upon

those other persons included in larger category set out in the last clause of the first section.

2. That the slab haul was machinery is substantially admitted by the language of the answer already quoted. The Encyclopedic Dictionary, under the title "Machine," gives this definition: "An instrument of a lower grade than an engine, its motor being distinct from the operating part, whereas, the engine is automatic as to both. It is also distinct from a tool, as it contains within itself its own guide for operation. A contrivance by means of which a moving power is made to act upon any body and communicate motion to it. Machines are simple and compound, complex or complicated. The simple machines are the six mechanical powers, viz., the lever, the wheel and axle, the pulley, the inclined plane, the wedge, and the screw. In compound machines two or more of these powers are combined for the production of motion or the application or transmission of force." It is stated in the Standard Dictionary that a machine is "any combination of inanimate mechanism for utilizing or applying power." The slab haul in question consisted of a combination of several numbers of the wheel and axle. It comes clearly within the definition of "machine" already given. Its operation depended upon the motion of its several parts in connection with each other. It was not a tool which is commonly handled by an operator, but, on the other hand, was a stationary appliance which responded to the application of power, and produced certain results growing out of its operation. Both by the pleadings and the evidence it is shown to be within the definition of "machinery."

3. The complaint clearly discloses a work involving risk or danger to the employee engaged therein, so that under the concluding words of the section, as well as under the first part mentioned, the plaintiff has

disclosed a case within the purview of the statute. Concluding that the statute does apply to the case made in the complaint, it follows that the court was correct in excluding from the jury the defense of contributory negligence and assumed risk. In respect to contributory negligence the court correctly instructed the jury, under Section 6 of the law, that it could be considered in this action only in mitigation of damages.

4. Error is also predicated on the refusal of the court to give an instruction to the effect that, if the injury was caused by an inevitable accident, the plaintiff could not recover. No situation of that kind is disclosed by the pleadings or the testimony. An instruction on that point, therefore, would have been merely academic and hence improper. We find no error in the record.

The judgment of the Circuit Court is affirmed.

                                                        AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.